UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
KEVIN McNAMARA,

                Plaintiff,

    - against -                **MEMORANDUM AND ORDER**

METROPOLITAN TRANSPORTATION AUTHORITY,     13 Civ. 2411 (NRB)
NEW YORK TRANSIT AUTHORITY, and
MANHATTAN AND BRONX SURFACE OPERATING
AUTHORITY,

                Defendants.
---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


      Plaintiff Kevin McNamara ("McNamara") commenced this action against the Manhattan and Bronx Surface Transit Operating Authority, the New York City Transit Authority, and the Metropolitan Transportation Authority (collectively "defendants"), alleging employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), the New York State Human Rights Law, N. Y. Exec. Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"). Presently before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein, this motion is denied.

## BACKGROUND[1]

McNamara was hired by the New York City Transit Authority in 1988.  After holding various positions in the Department of Buses, he was promoted in October 2002 to the position of assistant general superintendent.  McNamara Aff. ¶ 2; Chiu Decl., Ex. B ¶¶ 4-5.

In July 2004, McNamara was observed acting erratically and repeatedly restating the same story in a disconnected manner.  John Hein, at that time General Manager of the Bronx Division of the Department of Buses, sent McNamara to be medically evaluated by a staff physician.  56.1 ¶ 28; Chiu Decl., Ex. S.  McNamara alleges that he suffers from bipolar disorder, for which he was hospitalized at various points from 2004 to 2006.  Chiu Decl., Ex. B ¶ 3; McNamara Dep. at 11, 48.  In 2004 and again in 2006, McNamara's disorder forced him to take a leave of absence from work.  McNamara Aff. ¶ 4; Chiu Decl., Ex. B ¶ 3.

---

[1] The facts recited here are drawn from the following sources: (1) the complaint filed April 11, 2013 ("Complaint"); (2) defendants' Local Rule 56.1 Statement ("56.1"); (2) the Declaration of Daniel Chiu in Support of Defendants' Motion for Summary Judgment ("Chiu Decl."), and the exhibits attached thereto, including the transcript of McNamara's deposition ("McNamara Dep."); (3) Plaintiff's Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment ("56.1 Response"); (4) the Affidavit of Kevin McNamara in Support of McNamara's Opposition to Defendants' Motion for Summary Judgment ("McNamara Aff."); and (5) the Declaration of Benjamin L. Federici in Support of McNamara's Opposition to Defendants' Motion for Summary Judgment ("Federici Decl."), and the exhibits attached thereto, including the deposition of defendants' resource management officer Anna-Marie Grimes ("Grimes Dep.").

After eight years as an assistant general superintendent, McNamara applied for a promotion to general superintendent.  His application was denied twice.   After he filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), he applied again and was promoted.

McNamara alleges that in denying his first two applications, defendants discriminated against him because of his disability. Specifically, McNamara asserts that Hein, who by the time McNamara first applied for a promotion held the post of Executive Vice President and in that position oversaw McNamara's direct supervisors, would not let McNamara advance within the Department of Buses because of his mental condition.

### I.   December 2010 Denial of Promotion

In November 2010, McNamara responded to a Job Vacancy Notice ("JVN") for the position of general superintendent by submitting a resume to defendants' human resources department.  56.1 ¶ 4. According to the JVN, a general superintendent is "accountable for ensuring the safe and reliable provision of bus service while being assigned to a depot or Road Operations for NYC Transit, MTA Bus or LI Bus."  Chiu Decl., Ex. H.

In addition to setting forth the various specific responsibilities of the position, the JVN listed certain "Experience and Education Requirements" and "Desired Skills."

Chiu Decl., Ex. H.  Applicants were required to have previous experience as, inter alia, an assistant general superintendent of transportation or an equivalent title.  The listed desired skills were "Extensive depot/division transportation operations experience," "Strong communication and negotiation skills," and "Knowledge of rules and regulations and union contracts."  Id.

Defendants' policy was for the human resources department to determine in the first instance whether an applicant responding to a JVN met the minimum qualifications for the noticed position.  If so, the applicant's supervisors would perform their own evaluation and make a recommendation as to whether he or she should receive an interview.  56.1 ¶ 5.  McNamara met the minimum qualifications for the general superintendent position, and four of his supervisors filled out a "Staff Evaluation Form," dated December 17 and 20, 2010 (the "December Evaluation Form").  Id. ¶ 6; Chiu Decl., Ex. J.

The supervisors--General Manager Anna Peck, Assistant General Manager Charlie Dagis, and General Superintendents Ahmed Cooper-Bey and William Finn--did not recommend McNamara for an interview.  Under the heading "Justification," the December Evaluation Form stated that McNamara was a "highly energetic manager" and that "[w]hen focused on an assignment he is very productive," but explained that his "[k]nowledge of labor relations needs to improve to achieve next level of management."  Chiu Decl., Ex. J.

Similarly, in evaluating McNamara's "Technical Performance Factors," the supervisors rated his knowledge of "Labor Relations/Personnel Administration" as a three out of a possible score of six, and commented that his "[k]nowledge of contract and labor relations needs improvement." Id. McNamara was informed by letter dated December 30, 2010, that he had not been recommended for an interview. Chiu Decl., Ex. K.

McNamara takes issue with his supervisors' justification for failing to recommend him for an interview, asserting that when he applied for the general superintendent position, he had an "extensive knowledge of labor relations" because he "dealt daily with labor relations and had extensive experience in that area." 56.1 Response ¶¶ 39-40. In his affidavit, McNamara states that as an assistant general superintendent, he "on a daily basis . . . handled fair practice management," which meant "handling disciplinary proceedings for superintendents, dispatchers, and other employees of the MTA." McNamara Aff. ¶ 9. When an employee would be involved in a disciplinary matter, McNamara would review the relevant paperwork, inform the employee of his or her rights, and meet with the employee and his or her union representative. In addition, McNamara had "testified at arbitrations relating to disciplinary issues." Id.

According to McNamara, his "experience with labor relations over almost eight years as an assistant general superintendent

gave [him] a wealth of knowledge" on the subject.  McNamara Aff.
¶ 9.  In contrast, he points out, the two assistant general
superintendents who responded to the same JVN for promotion to
general superintendent and were selected for interviews each had
held the title of assistant general superintendent for a year or
less.  56.1 Response ¶ 41; Federici Decl., Ex. D.

There is scant evidence in the record concerning the
difference between the assistant general superintendent and
general superintendent positions.  Defendants' resource management
officer Anna-Marie Grimes testified that when the title of
assistant general superintendent was added to the Department of
Buses, it was to be "the off hours general superintendent," Grimes
Dep. at 65, suggesting that any difference in responsibility
between the two positions was--at least initially—tied to the
difference in the time of the shifts.  Cf. Chiu Decl., Ex. I
(McNamara resume submitted to human resources stating that as
assistant general superintendent since October 2002, he
"[o]versee[s] PM operations in various locations").


II. **The May 2011 Denial of Promotion**

On March 28, 2011, McNamara responded to another JVN for the
position of general superintendent (the "March JVN"), which listed
the same educational and experience requirements and desired
skills as the JVN McNamara had responded to the previous November.

Chiu Decl., Exs. L, M.   In a Staff Evaluation Form dated April 20 and 22, 2011 (the "April Evaluation Form"), Peck, Dagis, and Cooper-Bey again evaluated McNamara as a "highly energetic motivated manager" who was "[v]ery productive when focused on an assignment."   Chiu Decl., Ex. N.   This time, however, they recommended him for an interview.   The form states that McNamara "[h]as shown improvement and made strides on Leadership Performance Factors," and the supervisors rated his knowledge of "Labor Relations/Personnel Administration" as a four out of six. Id.

Each of the eleven candidates who were recommended for interviews for the March JVN were interviewed on May 3, 2011, by a panel consisting of Assistant General Manager Cordell Rogers, the chairperson for the interview panel, Assistant General Manager Palmer Reale, and General Superintendent Dorothy Spence.   56.1 ¶ 10; Grimes Dep. at 5; Chiu Decl., Ex. O.   Each interviewee was asked the same five questions and, according to defendants, scored solely on his or her ability to state the panel's desired responses.   56.1 ¶ 10.

The interviewees' scores ranged from a low of 24 to a high of 76.[2]   56.1 ¶ 11; Chiu Decl., Ex. O.   The six interviewees who

---

[2] The parties disagree on the process the interview panel used to score the interviewees' responses.   Defendants, citing the deposition testimony of Grimes, assert that "[e]ach interviewer scored the candidate and following the interview, the panel issued a consensus score for each candidate."   56.1 ¶ 10.   McNamara, however, contends that the testimony of defendants' first

scored 65 or higher were selected for the promotion to general superintendent.  56.1 ¶ 11; Chiu Decl., Ex. O.  McNamara received a score of 60.  56.1 ¶ 11; Chiu Decl., Ex. O.  Grimes, one of two deponents designated by defendants pursuant to Federal Rule of Civil Procedure 30(b)(6), testified that the interview panel would not have determined a cut off score in advance, but would instead have chosen a "clear delineation" point after the interviews were completed.  Grimes Dep. at 55-57; see also id. at 55 ("We look for, like, a clear delineation of where—that you can say this group of people did really well.  This is the next group of people.  This is the next group of people.").  Of the six interviewees who were recommended for promotion, five were assistant general superintendents.  Of the five, four had less than two years of experience and one had three years of experience as an assistant general superintendent.  Federici Decl., Ex. E.

In a letter dated May 5, 2011, McNamara was informed that he would not be recommended for a promotion by the interview panel. Chiu Decl., Ex. P.  Grimes, who had spoken to Cordell Rogers about McNamara's interview prior to her deposition in this action, testified that McNamara received a lower interview score than the interviewees selected for promotion because his answers were "briefer" and less "specific," and "didn't go into th[e] detail"

---

Rule 30(b)(6) designee, senior director of human resources Juliet Montes, was that there was no "consensus" scoring.  See McNamara Opp. at 11-12.

that the successful candidates' answers did.  Grimes Dep. at 52-
53; see id. at 53 (promoted interviewees "showed that they had
more knowledge of what the role of a general superintendent was").
McNamara rejects this characterization of his interview, averring
that he was well-prepared for his interview in part because he
went over certain questions with Assistant General Manager Michael
Broe in advance.  During this preparatory session, McNamara and
Broe discussed an incident that formed the basis of one of the
interview panel's questions.  McNamara Aff. ¶¶ 14-16.

     More significantly, McNamara claims that the result of his
interview was preordained, because he was told by his supervisors
prior to his interview that he would not receive the general
superintendent promotion.  In his affidavit, McNamara states that
even before he was interviewed on May 3, 2011, he was told by
Assistant General Manager Dagis that he would not receive the
promotion to general superintendent as long as Executive Vice
President Hein was still employed by defendants, and that he would
only "stand a chance at receiving the promotion" after Hein
retired.  McNamara Aff. ¶ 13.[3]  McNamara testified that General

_____

[3] McNamara's references to Dagis's alleged statement may not be entirely
consistent.  In his Notice of Claim hearing, McNamara stated that in "January
2011," prior to his interview, he had a discussion with Dagis in Dagis's
office, where Dagis told him that he was "very pleased" with McNamara's work,
he had tried very hard to see that McNamara would get an interview, and that
"[i]t wasn't at his level that [McNamara] was denied."  Chiu Decl. Ex. D at
16-17.  McNamara testified further that Dagis had said that "[m]aybe next
time they will give you the interview" and "[t]hese people won't be around in
the future," but that Dagis did not "mention the names of any people" and
that it was McNamara who named Hein to Dagis.  Id. at 17.  In his deposition

Superintendent Cooper-Bey also told him, on or before the interview date, "You should be given the job as general superintendent. They're not going to give it to you.  They're going to give you the interview, but you're never going to get the job."  McNamara Dep. at 23 (internal quotation marks omitted).

McNamara believes that his advancement within the Department of Buses was impeded because Hein was embarrassed by McNamara's prior struggles with his mental illness and possessed substantial influence within the Department.  According to McNamara, Hein had "multiple members of his family in upper management in the Department of Buses," and "[n]o one was going to go against John Hein in this system."  McNamara Dep. at 39.  McNamara testified that three of the supervisors who did not recommend him for an interview in December 2010 and the chairperson of the interview panel that did not recommend him for promotion in May 2011 worked for Hein and, McNamara believed, were either loyal to or would not risk undermining Hein.  See id. at 15-16 (General Manager Peck) id. at 19 (Assistant General Manager Dagis); id. at 27-28 (General

---

in this action, McNamara testified that after he finished his interview, he met with Dagis, who told him "they're never going to give you this position" "as long as Hein is in office and people are loyal to him."  McNamara Dep. at 16-17.  If this is the same statement referred to by McNamara's affidavit, there is a discrepancy between his deposition testimony on one hand and his Notice of Claim hearing testimony and affidavit on the other hand as to the statement's timing and content.  To the extent that discrepancies exist, defendants have not argued that McNamara's account of Dagis's statement should not be credited, and at the summary judgment stage, we are obligated to resolve ambiguities in the evidence in McNamara's favor.

Superintendent Cooper-Bey); id. at 41 (Assistant General Manager Rogers).

Neither side deposed or submitted affidavits from Hein or any of the defendants' employees who allegedly denied McNamara's applications for general superintendent on behalf of Hein. Moreover, defendants do not deny that either Dagis or Cooper-Bey made the statements attributed to him by McNamara.

III.   **April 2012 Promotion**

On June 7, 2011, McNamara again applied to a JVN for the position of general superintendent. 56.1 ¶ 16; Chiu Decl., Ex. Q. Three weeks later, McNamara filed a charge of discrimination with the EEOC. 56.1 ¶ 2. In August 2011, Peck and Cooper-Bey recommended him for an interview, and on September 22, 2011, an interview panel recommended McNamara for the general superintendent position. 56.1 ¶¶ 16-17; Chiu Decl., Ex. R. McNamara's promotion became effective in April 2012. 56.1 ¶ 18.

IV.   **Procedural Background**

On or about January 10, 2013, the EEOC issued McNamara a right to sue letter. Complaint ¶ 31. McNamara filed his complaint in this action on April 11, 2013, asserting claims of disability discrimination under the ADA, the NYSHRL, and the NYCHRL.

Defendants filed a motion for summary judgment on April 24, 2015, and this motion was fully briefed on July 10, 2015.

## DISCUSSION

I. **Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphases omitted)). When determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010). At this stage, a fact is material "when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (other internal quotation marks omitted).

The Second Circuit has repeatedly emphasized that courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). "Where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (internal quotation marks omitted). Nonetheless, a plaintiff alleging employment discrimination must still "provide more than conclusory allegations," and "show more than some metaphysical doubt as to the material facts" to resist summary judgment. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted).

## II.  **Disability Discrimination**

McNamara contends that defendants failed to promote him to general superintendent in December 2010 and May 2011 because of his disability.[4]  To the extent pertinent here, the ADA prohibits

---

[4] Focusing on various discriminatory acts alleged by McNamara in his deposition to have preceded his November 2010 application for the general superintendent position, defendants devote much of their motion for summary judgment to arguing that McNamara's ADA claims based on these acts have not been administratively exhausted and all of his discrimination claims based on some of these acts are barred by the relevant statutes of limitations. Moreover, defendants argue that most of these alleged acts do not constitute

discrimination against "a qualified individual on the basis of disability in regard to . . . the . . . advancement . . . of employees."  42 U.S.C § 12112(a).

Discrimination claims under the ADA are evaluated under the familiar burden-shifting framework established by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  See, e.g., Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).  Under this framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

---

adverse employment actions.  However, as McNamara concedes, his claims are based solely on defendants' denial of promotion in December 2010 and May 2011.  See McNamara Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("McNamara Opp.") at 5 ("Plaintiff brings this action for defendant's discriminatory failure to promote plaintiff . . . in December 2010 and Spring 2011."); Complaint at ¶¶ 32-33.  While McNamara contends that these prior acts are "relevant background information evidenc[ing] a pattern by the defendant to discriminate against plaintiff based on his disability," McNamara Opp. at 5, we need not consider any of this evidence at this stage because we find that other material issues of fact preclude the grant of defendants' motion for summary judgment.

I.   **Prima Facie Claim**

To make out a prima facie case under the ADA, a plaintiff must establish that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001) (internal quotation marks omitted).  For purposes of their motion, defendants do not dispute that McNamara has met the first three of these elements. Moreover, the denial of a promotion may constitute an adverse employment action.  See, e.g., Demoret v. Zegarelli, 451 F.3d 140, 151-52 (2d. Cir. 2006).

In satisfying the fourth element of a prima facie claim, a plaintiff must show not only that he suffered an adverse employment action, but that it occurred "under circumstances that give rise to an inference of discriminatory intent." Amador v. Macy's E.-Herald Square, No. 12 CV. 4884 (MHD), 2014 WL 5059799, at *19 (S.D.N.Y. Oct. 3, 2014) (internal quotation marks omitted); see also McDonnell v. Schindler Elevator Corp., ---Fed. App'x---, 2015 WL 4038567, at *1 (2d Cir. July 2, 2015) (plaintiff's prima facie burden includes adducing "evidence that allows for a reasonable inference of discrimination").  However, the "burden of proof that must be met to permit an employment-discrimination plaintiff to

survive a summary judgment motion at the prima facie stage is <u>de
minimis</u>." <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 37 (2d
Cir. 1994) (alteration and internal quotation marks omitted).
McNamara has met that burden here for the following reasons.

**First**, McNamara provides evidence that he had substantially
more work experience as an assistant general superintendent than
both (1) the assistant general superintendent applicants who were
selected to interview for the general superintendent position in
December 2010, and (2) the assistant general superintendent
applicants who were promoted after an interview in May 2011.  The
fourth element of a <u>prima facie</u> case is "established if the
employer fills the position with a person outside the protected
class who was similarly or less qualified than the plaintiff."
<u>Varughese v. Mount Sinai Med. Ctr.</u>, No. 12 CIV. 8812 (CM), 2015 WL
1499618, at *41 (S.D.N.Y. Mar. 27, 2015) (quoting <u>Yu v. New York
City Hous. Dev. Corp.</u>, 494 F. App'x 122, 125 n.4 (2d Cir. 2012)).
While an "inference of discrimination cannot emerge until after a
plaintiff's qualifications are compared against the promoted
employee's," a plaintiff may meet his <u>prima facie</u> burden without
presenting a substantial amount of evidence about his
qualifications relative to those of successful applicants.
<u>Anyanwu v. City of New York</u>, No. 10 CIV. 8498 (AJN), 2013 WL
5193990, at *15 (S.D.N.Y. Sept. 16, 2013); <u>see</u> <u>id.</u> at *13-17
(plaintiff met <u>prima facie</u> burden despite "limited evidence of how

his qualifications compare to those of the successful applicants"); Hinton v. City Coll. of New York, No. 05 CIV. 8951 (GEL), 2008 WL 591802, at *16 (S.D.N.Y. Feb. 29, 2008) ("In order to 'establish the minimal prima facie case by making reference to the disparate treatment of other employees,' all that is required is that those employees 'have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" (quoting McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001))).

Here, McNamara had nearly eight years of experience as an assistant general superintendent when he first applied for a promotion in November 2010.  In contrast, the two assistant general superintendents recommended for interviews in December 2010 each had a year or less of experience in that position, and the five assistant general superintendents who were recommended for promotions in May 2011 each had less than three years of experience.  See Federici Decl., Exs. D, E.  Moreover, the record indicates that experience as an assistant general superintendent would be valued in an applicant for general superintendent.  The JVNs for the general superintendent position stated that applicants "[m]ust have previous experience in the title Assistant General Superintendent, Transportation or equivalent," in addition to at least "four years of supervisory/managerial experience."

Chiu Decl., Exs. H, L.   The record suggests that the
responsibilities of an assistant general superintendent and a
general superintendent may have been similar, see Grimes Dep. at
65, and thus work in the former position would likely help prepare
one for the latter position.   Because defendants selected
applicants ahead of McNamara who were, at least in one key respect,
substantially less qualified than him, a jury could reasonably
draw an inference of discrimination.   See Mandell v. Cnty. of
Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (circumstances gave rise
to inference of discrimination where "[plaintiff] and the promoted
officers were all qualified and [plaintiff] had greater or
comparable seniority, having spent more time in rank and more time
in the department than all but one officer of those promoted ahead
of him"); Anyanwu v. City of New York, 2013 WL 5193990, at *17
(plaintiff established prima facie case where defendant promoted
exclusively applicants outside of plaintiff's protected class,
"several of whom were less qualified than Plaintiff in one
important respect").

   **Second**, McNamara was ultimately recommended by an interview
panel for promotion to general superintendent on September 22,
2011, a few months after he hired an attorney and filed a charge
of discrimination with the EEOC on June 29, 2011.   The fact that
McNamara received a promotion shortly after filing a charge of
discrimination may reasonably support an inference of an unlawful

motivation behind defendants' two rejections of his application for promotion in the previous year.  See Little v. Nat'l Broad. Co., 210 F. Supp. 2d 330, 383 (S.D.N.Y. 2002) ("[Plaintiff's] receipt of a merit upgrade after she commenced this litigation may raise a material issue of fact as to why she was not given the promotion at an earlier date."); Polley v. Federal Reserve Bank, No. 92 Civ. 7114 (JFK), 1994 WL 465923, at *6 (S.D.N.Y. Aug. 23, 1994) (finding that there was an issue of material fact as to whether plaintiff was subject to discrimination where she was only promoted after she filed an internal complaint); cf. Holcomb, 521 F.3d at 143 ("[A] reasonable finder of fact might determine that the college hired a black coach as a way of concealing its prior discrimination.").

**Finally**, as discussed infra, McNamara has put forward evidence from which a reasonable jury could find that each of defendants' asserted justifications for denying his applications for the general superintendent position was pretextual.  "Showing the employer's proffered legitimate explanation for termination is not worthy of belief is 'one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.'"  Windham v. Time Warner, Inc., 275 F.3d 179, 188 (2d Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)).

In sum, McNamara has met his burden of making out a <u>prima</u> <u>facie</u> case.


**II.    Defendants' Nondiscriminatory Justifications**

Defendants have articulated a legitimate nondiscriminatory reason for each of their two denials of McNamara's application for promotion.  As to the first denial, defendants rely on the December Evaluation Form completed by McNamara's supervisors to argue that McNamara was not recommended for an interview because his "knowledge of labor relations need[ed] to improve."  Chiu Decl., Ex. J.  As to the second denial, defendants have put forward evidence demonstrating that McNamara was recommended for an interview by his supervisors, but received an interview score of 60, below the interview panel's designated cut off of 65.  Grimes testified that she was informed prior to her deposition by the chairperson of the panel, Cordell Rogers, that McNamara's responses lacked detail, and "other candidates gave better answers" and were able to demonstrate that "they knew more about a particular question or a responsibility."  Grimes Dep. at 52. Each of these articulated reasons satisfies defendants' burden of demonstrating a nondiscriminatory basis for denying McNamara a

promotion.  <u>See</u> <u>Reeves</u>, 530 U.S. at 142 (the employer's "burden is one of production, not persuasion").[5]

### III. <u>Pretext</u>

---

[5] McNamara argues that defendants should be precluded from offering evidence as to their articulated reasons for not promoting him because defendants' two Rule 30(b)(6) designees did not have sufficient knowledge on those topics, which were identified in McNamara's notice of deposition.  This argument is without merit.

Preliminarily, we note that a Rule 30(b)(6) deponent is not required to have personal knowledge of the subjects identified in the deposition notice.  Instead, "[a] corporation has an affirmative duty to prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." <u>Smith & Wollensky Rest. Group, Inc.</u>, No. 06 Civ. 6198 (JCF), 2009 WL 773344, at *1 (S.D.N.Y. Mar. 18, 2009) (internal quotation marks omitted); <u>see also</u> <u>Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L.</u>, No. 05-CV-2851 (JFB), 2008 WL 905892, at *28 (E.D.N.Y. Mar. 31, 2008) ("It is axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of corporate books and records.").  Here, in testifying about defendants' justifications for denying McNamara's applications in December 2010 and May 2011, defendants' second Rule 30(b)(6) designee Grimes properly relied on the December Evaluation Form and her own discussions with Cordell Rogers, the chairperson of McNamara's May 2011 interview panel.  <u>See</u> Grimes Dep. at 5, 30-31, 51.  To the extent that McNamara complains that defendants' Rule 30(b)(6) designees should have been better prepared to answer questions about how his supervisors arrived at the conclusion that he lacked sufficient knowledge on the subject of labor relations, <u>see</u> McNamara Opp. at 10-11, he had every opportunity to raise that issue with the Court before the close of discovery and the conclusion of briefing on this motion for summary judgment.  McNamara closed Grimes's deposition without raising any concerns regarding Grimes's knowledge of any subject or requesting that defendants designate another deponent.  <u>See</u> Grimes Dep. at 76.  Following the deposition, McNamara did not move to compel defendants to designate another person to be deposed, request any additional discovery, or seek to extend discovery.  Nor did he attempt to depose any of the supervisors who filled out his December Evaluation Form.  McNamara's failure to timely address any purported inadequacy in the Rule 30(b)(6) testimony "bars [him] from complaining about the adequacy of the witness' testimony at this [summary judgment stage]." <u>AstraZeneca AB v. Dr. Reddy's Labs., Ltd.</u>, 603 F. Supp. 2d 596, 603 (S.D.N.Y. 2009); <u>see also</u> <u>Lenigan v. Syracuse Hancock Int'l Airport</u>, No. 5:10-CV-1420 (GTS), 2013 WL 149461, at *8 (N.D.N.Y. Jan. 14, 2013) ("Having failed to avail herself of those remedies, Plaintiff cannot now (at the summary judgment stage) reasonably seek the preclusion of [a witness's] testimony based on a purported inadequacy of his preparation for his deposition as a corporate designee.").

Finally, we must consider whether McNamara has produced evidence from which a rational trier of fact could find by a preponderance of the evidence that "the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). "[I]n many cases, a showing of pretext, when combined with a prima facie case of discrimination, will be enough to permit a rational finder of fact to decide that the decision was motivated by an improper motive." Holcomb, 521 F.3d at 141. The ultimate question is "whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000).

Here, viewing the evidence in the light most favorable to McNamara, we conclude that a reasonable juror could find that both of defendants' articulated reasons for denying McNamara's applications were pretextual explanations meant to hide an unlawful motive. The December Evaluation Form indicates that McNamara's supervisors did not recommend him for an interview for the general superintendent position because his knowledge of labor relations needed improvement. However, according to McNamara, two of the supervisors who signed that form, Charlie Dagis and Ahmed Cooper-Bey, told him some time after his application was denied that he would never receive the promotion to general superintendent

while Executive Vice President Hein was employed by defendants.
See McNamara Aff. ¶ 13; McNamara Dep. at 23.   Moreover, Dagis's
and Cooper-Bey's statements suggest that each supervisor would
have recommended McNamara for an interview if not for pressure
from his own superiors.   Dagis told McNamara that he had "tried
very hard to see that [McNamara] would get [an interview], . . .
he was very pleased with [McNamara's] work," "[i]t wasn't at his
level that [McNamara] was denied," and "[m]aybe next time they
will give you the interview" because "[t]hese people won't be
around in the future."   Chiu Decl., Ex. D at 17.   Cooper-Bey told
McNamara that he "should be given the job as general
superintendent," but even though he would be offered the interview,
he was "never going to get the job."   McNamara Dep. at 23 (internal
quotation marks omitted).

        A rational juror could credit these statements and conclude
that McNamara's supervisors concocted the justification that
McNamara's knowledge of labor relations needed to improve in order
to provide a pretext for denying his application.   That conclusion
would be supported by McNamara's assertions that he often met with
employees and their union representatives concerning disciplinary
matters and testified at disciplinary proceedings, in addition to
McNamara's lengthy experience as an assistant general
superintendent relative to those applicants who were recommended
for interviews.

For similar reasons, a rational juror could conclude that defendants' articulated reason for the May 2011 denial of McNamara's application for general superintendent was also unworthy of credence.  While defendants contend that McNamara's interview responses were not as detailed and specific as the responses of the promoted interviewees, the evidence that (1) the chairperson of McNamara's interview panel, Cordell Rogers, worked for Hein and (2) McNamara was told by his supervisors before the interview that he would not receive the promotion as long as Hein was employed establishes an issue of fact as to whether the result of the interview was predetermined.

In concluding that a triable issue of fact exists, we find it significant that defendants have not attempted to refute McNamara's account of Dagis's and Cooper-Bey's statements to him. Defendants have not submitted any testimony or affidavits from Dagis or Cooper-Bey, and do not even address their alleged statements in the motion for summary judgment.  Nor have defendants submitted any sworn statements from (1) the other supervisors that filled out McNamara's December Evaluation Form---Peck and Finn--- to either state that they felt no pressure from Hein and their other superiors to deny McNamara a promotion or to substantiate the documented rationale for that denial, or (2) any of the members of McNamara's interview panel to state that there was no pressure from Hein and their other superiors to score McNamara below the

cut off for promotion.  In the absence of any such evidence, we are precluded from finding that no rational juror could conclude that McNamara's account of defendants' failure to promote him is true.

On this record, McNamara's largely unrefuted evidence of pretext, in combination with his evidence of discrimination at the prima facie stage, raises issues of fact requiring denial of defendants' summary judgment motion on McNamara's ADA claims.  See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013) ("[A] plaintiff may rely on evidence comprising her prima facie case . . . together with other evidence such as inconsistent employer explanations, to defeat summary judgment . . . .").[6] Though we find that summary judgment is denied on McNamara's disability discrimination claims, the parties should not interpret this finding as in any way reflecting an appraisal of the claims on the merits.

---

[6] McNamara's disability discrimination claims under the NYSHRL are analyzed under the same framework as McNamara's ADA claims, see, e.g., Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d Cir. 2006), and thus defendants' motion for summary judgment is denied on those claims as well.  McNamara's claims brought under the NYCHRL "must be reviewed independently from and 'more liberally' than their federal and state counterparts" in light of The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005). Loeffler v. Staten Island University Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (quoting Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 66-69, 972 N.Y.S.2d 27, 31 (1st Dep't 2009)). Because we find that McNamara succeeds in defeating defendants' motion for summary judgment pursuant to the stricter standards of the ADA, we do not separately consider his claims under the NYCHRL, which necessarily withstand summary judgment as well.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is denied. The parties and their counsel are directed to appear for a conference on December 10, 2015 at 3:00 p.m. in Courtroom 21A.

**SO ORDERED.**

Dated:     New York, New York
           November 3, 2015

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
Michael G. O'Neill, Esq.
Benjamin L. Federici, Esq.
30 Vesey Street, 3rd Floor
New York, NY 10007

**Attorneys for Defendant**
Daniel Chiu, Esq.
Martin B. Schnabel, Esq.
NYC Transit Authority
130 Livingston Street, Room 1220-K
Brooklyn, NY 11201